Dennis D. REIMER, Plaintiff-Respondent,

v.

BADGER WHOLESALE COMPANY, INC.,
Defendant-Appellant.

Court of Appeals

*No. 88–0177. Submitted on briefs September 9, 1988.—Decided
November 2, 1988.*

(Also reported in 433 N.W.2d 592.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Thomas M. Olejniczak* and *Sara E. Ramaker* of *Liebmann, Conway, Olejniczak & Jerry, S.C.* of Green Bay.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Roy N. Fine* of *Di Renzo and Bomier* of Neenah.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

SCOTT, C.J.  Badger Wholesale Company, Inc. (Badger), appeals from a judgment awarding its former employee, Dennis Reimer, $16,500 on a breach of contract claim. Badger argues that Reimer was an employee-at-will and therefore could not bring a

breach of contract claim after his termination. In the alternative, Badger argues that the measure of damages was incorrect. It also appeals an order which denied its motion for a new trial.

We conclude that the contractual breach was unrelated to the term or duration of employment; therefore, a breach of contract claim will lie. Further, we conclude that the measure of damages was correct; however, credible evidence, in the light most favorable to Reimer, only supports a judgment of $16,245.81. We therefore modify the judgment to reflect this amount. The order denying the motion for a new trial is affirmed.

## FACTS

We state the facts in the light most favorable to the jury verdict. Reimer worked in Missouri as a wholesale foods salesperson. Following a death in the family in Wisconsin, Reimer considered moving back to the area if he received an offer of suitable employment.

Over the course of several meetings between Badger representatives and Reimer, an agreement evolved whereby Reimer would receive a minimum wage base salary plus commission. He also was offered an exclusive territory in the Neenah-Menasha area and an opportunity to expand Badger's business into the Oshkosh area. Badger representatives further told Reimer that he would have a ninety-day trial period to make $10,000 in sales. Based on Reimer's experience, he was told that he could expect to earn between $20,000 and $25,000 a year.

After accepting Badger's offer, Reimer quit his previous employment where he earned $350 per week

without commission. He and his family incurred moving expenses of slightly over $2000.

After beginning work for Badger, Reimer discovered that other sales representatives already handled twenty-six accounts in the Neenah-Menasha area. When he pressed Badger about opening up territory near Oshkosh, it established a minimum number of sales, under which it would not make deliveries, forcing Reimer to deliver goods himself.

Badger terminated Reimer after seventeen and a half working days for lack of sales. Reimer had made thirteen sales in his brief employ, considered by an expert witness to be very good for a salesperson in new territory.

Reimer brought suit against Badger, alleging breach of contract, misrepresentation, promissory estoppel and wrongful dismissal. The last two causes of action were dismissed on Badger's motion for summary judgment. Prior to submission of the case to the jury, Reimer elected to proceed on the contract theory.

A special verdict was submitted which asked: (1) if there was a contract; (2) if it had been breached; and (3) if so, what were appropriate damages. The first question was answered by the court in the affirmative. The jury found a breach and awarded $16,500 in damages. Badger appealed.

## BREACH OF CONTRACT

Badger argues that Reimer was an employee-at-will under *Brockmeyer v. Dun & Bradstreet*, 113 Wis. 2d 561, 572, 335 N.W.2d 834, 840 (1983). Therefore, it reasons that Reimer could be discharged for any reason or no reason at all without Badger incurring

liability. *Yanta v. Montgomery Ward & Co.,* 66 Wis. 2d 53, 63 n. 16, 224 N.W.2d 389, 394 (1974).

Reimer responds by pointing out that the breaches involved went beyond the premature termination of his employment. Rather, Reimer argues that the backbone of his claim was the failure of Badger to provide him with an exclusive territory in Neenah-Menasha or a reasonable opportunity to expand the Oshkosh area.

First, we note that in dismissing Reimer's wrongful discharge claim the trial court made a finding that this was an employment-at-will situation. This fact does not, however, relieve Badger of its responsibility for any and all promises made to Reimer as a prospective employee. *See Hale v. Stoughton Hosp. Ass'n, Inc.,* 126 Wis. 2d 267, 274, 376 N.W.2d 89, 93 (Ct. App. 1985).

The language of *Yanta* cannot be read as broadly as Badger suggests. "[A]n employer may discharge [an at-will employee] for any reason *without incurring liability therefor.*" *Yanta,* 66 Wis. 2d at 63 n. 16, 224 N.W.2d at 394 (emphasis added); *Brockmeyer,* 113 Wis. 2d at 579, 335 N.W.2d at 843 (Day, J., concurring). In other words, the at-will doctrine protects the employer from liability *for the termination.* Here, breaches were committed by Badger prior to Reimer's termination; the termination was merely one of the results brought about by the previous breaches.

■ Reimer alleged and proved that Badger's failure to provide him with the promised exclusive territory and opportunity for expansion prevented him from doing his job to the expectations of himself and others. As a result, he was terminated for these "poor sales." Because Reimer's claim was not dependent on his

status as an at-will employee or otherwise, this was a legitimate breach of contract case.

## DAMAGES

The jury awarded $16,500 to Reimer as damages on the breach of contract claim. A summary of damages prepared by Reimer as an exhibit broke down damages as follows:

| | |
|---|---|
| Loss of income while employed at Badger (Difference between salary at Badger and previous salary in Missouri) | $   1,188.00 |
| Loss of income following termination until time of trial (Based on salary in Missouri) | 12,950.00 |
| Moving expenses | 2,107.81 |
| Incidental and consequential damages | 5,000.00 |
| TOTAL | $  21,245.81 |

We take note that the damages award approximated Reimer's summary with the exception of the incidental and consequential damages.

Badger argues that the damages should be limited to what Reimer would have earned at Badger had he stayed there for the term of his employment—ninety days. It relies on *Wassenaar v. Panos,* 111 Wis. 2d 518, 331 N.W.2d 357 (1983), which states:

> According to black-letter law, when an employee is wrongfully discharged, damages are the salary the employee would have received during the unex-

pired term of the contract plus the expenses of securing other employment reduced by the income which he or she has earned, will earn, or could with reasonable diligence earn, during the unexpired term.

*Id.* at 534, 331 N.W.2d at 365 (footnote omitted).

The fallacy in Badger's argument is that, as previously noted, this is not a wrongful discharge case but a breach of contract action. Remedies for breach of contract protect three interests: the expectation interest, the reliance interest, and the restitution interest. *Thorp Sales Corp. v. Gyuro Grading Co.*, 111 Wis. 2d 431, 438, 331 N.W.2d 342, 346 (1983) (citing Restatement (Second) of Contracts sec. 344 (1981)). We consider the damages proven by Reimer to be based upon his reliance interest.

Remedies for injury to a reliance interest are defined as "being reimbursed for loss caused by reliance on the contract by being put in as good a position as he would have been in had the contract not been made." Restatement (Second) of Contracts sec. 344 (1981). Had the contract between Reimer and Badger not been made, he would not have had moving expenses and would still be employed in Missouri. These reliance damages are particularly appropriate where proof of the expectation interest, i.e., profit, is uncertain. *Id.* at sec. 349 comment a. Reimer's profit would have been difficult to determine because of his short sales history with Badger.

Badger also disputes the calculation of damages in that it is based on the time period between Reimer's termination and the date of trial. Our review of the record reveals no attempt by Badger to prove that

Reimer failed to mitigate his damages with respect to seeking or obtaining employment prior to trial. If the damages here reflected Reimer's expectation interest, there would be a concern about the length of time for which damages would be awarded, particularly since this was an at-will employment situation. However, Reimer chose to present his reliance interest as the measure of damages. As a result, the relevant inquiry, as contained in the Restatement cited earlier, is what sum of money would put Reimer in the position he would have been had the contract not been made.

Badger, at trial and on appeal, chose to argue only that damages should be limited to ninety days of salary at Badger's rate. The failure to argue the alternative measure of damages proposed by Reimer and present a mitigation-based defense left the jury, like us, in an evidentiary vacuum.[1] *Cf. Laribee v. Laribee,* 138 Wis. 2d 46, 51–52, 405 N.W.2d 679, 681–82 (Ct. App. 1987). In the absence of a proposal for a different cutoff date for damages, we cannot say that using the date of trial created an improper measure of damages.

## MOTION FOR NEW TRIAL

Badger moved for a new trial on the bases that the verdict was contrary to the law of damages in Wisconsin and that the damages were excessive. We have already dealt with the first ground alleged and concluded that the measure of damages was appropriate.

[1]On direct examination, Reimer did testify concerning his inability to find employment following termination. However, Badger did not pursue this nor did it request a jury instruction on mitigation.

If there is any credible evidence which, under any reasonable view, supports the jury's damage figure, we will not disturb the finding unless the award shocks judicial conscience, especially where the verdict has the trial court's approval. *Ford Motor Co. v. Lyons,* 137 Wis. 2d 397, 446, 405 N.W.2d 354, 374 (Ct. App. 1987). We initially express our opinion that the amount of the jury verdict, $16,500, does not shock judicial conscience. Therefore, we turn to the question of whether credible evidence supports this amount.

After examining the record, we cannot find support for an award which exceeds $16,245.81. The only evidence on damages was presented by Reimer. In addition to lost wages of $14,138 and moving expenses of $2107.81, Reimer made a claim of $5000 for incidental and consequential damages. No proof of this figure was received other than Reimer's statement when referring to his "summary of damages" exhibit that he was claiming this amount. Mere conclusions of a witness that he has been damaged to a certain extent without stating the facts on which the estimate is made is too uncertain. *Plywood Oshkosh, Inc. v. Van's Realty & Constr., Inc.,* 80 Wis. 2d 26, 31–32, 257 N.W.2d 847, 849 (1977). We therefore reduce the award from $16,500 to $16,245.81 and affirm the judgment as modified.

*By the Court.*—Judgment modified and, as modified, affirmed; order affirmed.